**The STATE of Texas, Petitioner**

**v.**

**Barbara OAKLEY, as Guardian of the Estate and Person of Richard Danziger, Respondent,**

**The State of Texas, Petitioner**

**v.**

**Barbara Oakley, as Guardian of the Estate and Person of Richard Danziger, Respondent.**

Nos. 06–0050, 06–0172.

Supreme Court of Texas.

Argued Feb. 15, 2007.

Decided June 8, 2007.

---

**13.** *Scott v. Walker,* 141 Tex. 181, 170 S.W.2d 718, 720 (Tex.Com.App.1943), *accord, Ste-* *vens' Ex'rs v. Lee,* 70 Tex. 279, 8 S.W. 40, 42 (Tex.1888).

Joel Thollander, McKool Smith, PC, Greg Abbott, Attorney General of Texas, Barry Ross McBee, Edward D. Burbach, Rafael Edward Cruz, Cynthia Lee Alexander, Philip A. Lionberger, Office of Atty. Gen., and Kent C. Sullivan, First Assistant Atty. Gen., Austin, for The Petitioner.

Scott Ozmun, Jeffrey Scott Edwards, Whitehurst Harkness Ozmun & Brees, Austin, for Respondent.

Justice BRISTER delivered the opinion of the Court.

Since a constitutional amendment in 1956,[1] the Legislature has enacted a number of statutes providing compensation for persons wrongfully imprisoned by the State. The current version is Chapter 103 of the Civil Practices and Remedies Code.[2] That Chapter allows either administrative or judicial claims,[3] the former providing a flat $25,000 per year of wrongful imprisonment,[4] the latter providing reimbursement of actual lost earnings, medical expenses, and legal fees.[5] In either case, there is a $500,000 cap.[6]

The questions presented in these companion cases are whether claims for compensation under Chapter 103 can be brought against the State (1) by an assignee, or (2) after settling with another unit of government. We hold the first cannot but the second can.

## I. Background

Christopher Ochoa and Richard Danziger were indicted for murder in Travis County in 1989. In return for the State's agreement not to pursue the death penalty against him, Ochoa agreed to plead guilty and give incriminating testimony against Danziger. A jury convicted Danziger at trial and sentenced him to life in prison. In 1996, someone else confessed to the murder and DNA evidence exonerated both Ochoa and Danziger. The charges against them were dismissed based on actual innocence, and they were released in February 2002. By that time, each had been imprisoned for 12 years. In the interim, Danziger had been assaulted by another inmate, leaving him with a severe brain injury.

After their release, Danziger (acting at all times through his legal guardian, his sister Barbara Oakley) and Ochoa brought

1. See Tex. Const. art. 3, § 51–c.

2. Tex. Civ. Prac. & Rem.Code §§ 103.001–.154.

3. Id. § 103.002; see also id. §§ 103.051–.052 (administrative), §§ 103.101–.105 (suit).

4. Id. § 103.052(a)(1).

5. Id. § 103.105(a).

6. Id. §§ 103.052(a)(2), 103.105(c).

civil rights claims against the City of Austin in federal district court. Both received substantial settlements: $9 million for Danziger and $5.3 million for Ochoa. Danziger also received a $950,000 settlement from Travis County. Meanwhile, Danziger sued Ochoa for falsely implicating him in the murder. To settle that case, Ochoa assigned Danziger $500,000 of his recovery from the City, and all of his compensation rights (if any) against the State under Chapter 103.

Danziger then filed these Chapter 103 actions against the State, one individually and one as assignee of Ochoa's claim. The State filed a plea to the jurisdiction asserting sovereign immunity and lack of standing, which the trial court denied. On interlocutory appeal, the Third Court of Appeals affirmed Danziger's right to bring both claims.[7] But as there was a dissent below, this Court has jurisdiction for review.[8]

## II. Chapter 103 and Assignment

With respect to Danziger's suit based on Ochoa's assignment, the State filed a jurisdictional plea asserting that Chapter 103 waives immunity from suit only by persons wrongfully imprisoned, not their assignees. Though the statute expressly waives the State's immunity from suit,[9] the State argues that assignees have no standing to bring such claims.[10]

As Chapter 103 claims are entirely a statutory creation, we look to the words of the statute to determine whether they are assignable.[11] While the statute does not mention assignment, it expressly prohibits survival of claims:

> Compensation payments to a person under this chapter terminate on the date of the person's death. Any payments scheduled to be paid after that date are credited to the state and may not be paid to any other person, including the person's surviving spouse, heirs, devisees, or beneficiaries under the person's will, or to the person's estate.[12]

This provision appears to be unique. Several Texas statutes expressly provide that claims survive to the heirs or estate of an injured person,[13] and the vast majority of Texas statutes are silent on the matter; but this appears to be the only statute in Texas that expressly *prohibits* survival.

 Nevertheless, because Chapter 103 does not mention assignment, Danziger urges us to apply the general rule allowing sale and assignment of causes of action.[14] But assignability and survivabili-

---

**7.** 181 S.W.3d 855 (Tex.App.-Austin 2005).

**8.** TEX. GOV'T CODE §§ 22.001(a)(1), 22.225(c).

**9.** TEX. CIV. PRAC. & REM.CODE § 103.101(a).

**10.** *See City of Houston v. Williams*, 216 S.W.3d 827, 829 (Tex.2007) (per curiam) (sustaining city's jurisdictional plea as retired firefighters had no standing to assert declaratory claim for future payments); *Texas Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 646 (Tex.2004) (sustaining state agency's jurisdictional plea as mayor and council member had no standing to assert equal-protection claims); *The M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 711 (Tex.2001) (sustaining hospital's jurisdictional plea,

which asserted sovereign immunity and no standing, on the latter ground).

**11.** *See PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 83 (Tex. 2004).

**12.** TEX. CIV. PRAC. & REM.CODE § 103.154(b).

**13.** *See, e.g., id.* §§ 71.004, 71.021(b); TEX. FAM. CODE §§ 3.406(b), 154.013; TEX. GOV'T CODE § 615.044; TEX. LAB.CODE §§ 408.001–.002; TEX.REV.CIV. STAT. art. 6439; TEX.REV.CIV. STAT. art. 581–33(G).

**14.** *See* TEX. PROP.CODE § 12.014(a) ("[A]n interest in a cause of action on which suit has been filed may be sold, regardless of whether

ty, though sometimes distinct, have long been linked in American and Texas law.[15] As the United States Supreme Court said in 1828, claims "which die with the party, and do not survive to his personal representative, are not capable of passing by assignment."[16] This Court too has noted that historically in Texas "assignability of a chose in action depended on whether it survived the owner's death."[17] When the two have been separated (in Texas or elsewhere), assignment has almost always

been more narrowly restricted than survival,[18] as the sale or assignment of a claim is more likely to distort the litigation process than the normal laws of inheritance.[19] Given this background, declaring a claim assignable when the Legislature has said it does not survive would be an historical anomaly.

The court of appeals held that Chapter 103 claims are assignable,[20] pointing to our opinion in *PPG Industries, Inc. v. JMB/Houston Centers Partners*, in which

the judgment or cause of action is assignable in law or equity, if the transfer is in writing.").

**15.** *See PPG Indus.*, 146 S.W.3d at 91 (noting that assignment and survival are "related but sometimes distinct" inquiries).

**16.** *Comegys v. Vasse*, 26 U.S. 193, 213, 1 Pet. 193, 7 L.Ed. 108 (1828).

**17.** *State Farm Fire and Cas. Co. v. Gandy*, 925 S.W.2d 696, 707 (Tex.1996); *Dearborn Stove Co. v. Caples*, 149 Tex. 563, 236 S.W.2d 486, 490 (1951) ("Rights of action of this type which do not survive death ... are considered nonassignable."); *Galveston, H. & S.A. Ry. Co. v. Ginther*, 96 Tex. 295, 72 S.W. 166, 167 (Tex.1903); *Stewart v. H. & T.C. Ry. Co.*, 62 Tex. 246, 247 (Tex.1884) ("[I]f the claim was such as would survive to the executor, it would be the subject of sale and assignment, but if it was such claim as would not survive to the executor, then it would not be the subject of assignment.").

**18.** *See, e.g., Strickland v. Sellers*, 78 F.Supp. 274, 276 (N.D.Tex.1948) ("Ordinarily survivability is necessary to assignability."); *Moore v. Lumbermen's Reciprocal Ass'n*, 258 S.W. 1051, 1056 (Tex.Com.App.1924, judgm't adopted) (holding right to receive compensation benefits could survive even though it was not assignable), *corrected on other grounds*, 262 S.W. 472 (Tex.Com.App. May 21, 1924, judgm't adopted); *Can Do, Inc. Pension and Profit Sharing Plan and Successor Plans v. Manier, Herod, Hollabaugh & Smith*, 922 S.W.2d 865, 867 (Tenn.1996) ("Although a chose in action must survive to be assignable, not every action that survives is assignable.");

*Southern Farm Bureau Cas. Ins. Co. v. Wright Oil Co.*, 248 Ark. 803, 454 S.W.2d 69, 71 (Ark.1970) ("[W]henever courts have explored the policy considerations pertinent to the issue, they have held—without exception, we think—that survivability of personal injury claims does not attract assignability in its wake."); Patrick T. Morgan, Note, *Unbundling our Tort Rights: Assignability for Personal Injury and Wrongful Death Claims*, 66 Mo. L.Rev. 683, 690 (2001) ("On the other hand, statutes sometimes override the common law and allow for the survivability of tort claims. When a statute makes such a claim survivable, the issue of assignability is not always resolved. Some statutes do not mention the assignability of the claim, whereas others stipulate that such a claim is not assignable. Where a statute does not refer to assignability for an action on wrongful death, the courts have relied upon the common law default position of unassignability of tort claims.") (citations omitted); Teal E. Luthy, Comment, *Assigning Common Law Claims for Fraud*, 65 U. CHI. L. REV. 1001, 1004 (1998) ("On occasion, however, courts reject the equivalency between survivability and assignability and hold a claim unassignable on public policy grounds, even though a survival statute provides for survival of the claim.").

**19.** *See, e.g., PPG Indus.*, 146 S.W.3d at 90; *Elbaor v. Smith*, 845 S.W.2d 240, 250 (Tex. 1992) (rejecting Mary Carter assignments); *Gandy*, 925 S.W.2d at 709 (same); *Zuniga v. Groce, Locke & Hebdon*, 878 S.W.2d 313, 317 (Tex.App.-San Antonio 1994, writ ref'd) (rejecting assignment of legal malpractice claim).

**20.** 181 S.W.3d at 863.

we noted that a statute's purpose,[21] common-law principles,[22] or the risks of distorting litigation sometimes provide guidance in cases of statutory silence.[23] But we have not generally applied these rules when a statute itself provides guidance as to legislative intent.[24] In *PPG*, for example, Chapter 17 of the Business & Commerce Code said nothing one way or the other about the survival or assignment of DTPA claims. Here, by contrast, the Legislature has prohibited survival of Chapter 103 claims in no uncertain terms. In a companion provision, the Legislature provided that Chapter 103 claims terminate if the claimant is subsequently convicted of a felony.[25] If Chapter 103 claims can be assigned, a claimant might try to avoid these limitations by selling the claim for cash before death or conviction occurs. We cannot construe Chapter 103 in a way that distorts the Legislature's intent in these key provisions.[26]

■ Additionally, the statute here involves an issue not involved in *PPG*—sovereign immunity. In such circum-stances, special rules of construction apply, as the Legislature has mandated that no statute should be construed to waive immunity absent "clear and unambiguous language."[27] As we generally defer to the Legislature in deciding whether and to what extent sovereign immunity should be waived,[28] we decline to extend Chapter 103's waiver beyond its express terms.

We recognize that wrongfully imprisoned persons—trying to pick up the pieces of their lives after perhaps years of injustice—may desperately want to sell a Chapter 103 claim because they need funds faster than the statutory process allows. But the question before us is not one of policy but of statutory construction, and our duty is to give effect to the Legislature's intent.[29] While the limitations in Chapter 103 may sometimes be harsh, the common-law rule was harsher still, entitling claimants to nothing from a state that wrongfully imprisoned them. As Chapter 103 is intended to ameliorate that rule, it is the Legislature's prerogative to set its boundaries.[30]

21. *PPG Indus.*, 146 S.W.3d at 84.

22. *Id.* at 87.

23. *Id.* at 90.

24. *See Belt v. Oppenheimer, Blend, Harrison & Tate, Inc.*, 192 S.W.3d 780, 784 (Tex.2006) ("When no statute addresses the survivability of a cause of action, we apply common law rules.").

25. Tex. Civ. Prac. & Rem.Code § 103.154(a).

26. *See* Tex. Gov't Code § 311.021(2) ("In enacting a statute, it is presumed that ... the entire statute is intended to be effective"); *In re M.C.C.*, 187 S.W.3d 383, 384 (Tex.2006) ("When interpreting a statutory provision, a court must ascertain and effectuate the legislative intent.") (internal quotation omitted); *PPG Indus.*, 146 S.W.3d at 85 (refusing to find DTPA claim assignable as doing so "would frustrate the clear intent of the Legislature").

27. Tex. Gov't Code § 311.034; *see City of Galveston v. State*, 217 S.W.3d 466, 469 (Tex. 2007); *Texas Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 641 (Tex.2004).

28. *City of Galveston*, 217 S.W.3d at 469.

29. *See In re Texas Dep't of Family and Protective Servs.*, 210 S.W.3d 609, 612 (Tex.2006); *City of Marshall v. City of Uncertain*, 206 S.W.3d 97, 105 (Tex.2006); *State v. Shumake*, 199 S.W.3d 279, 284 (Tex.2006).

30. *Cf. Brown v. Shwarts*, 968 S.W.2d 331, 334 (Tex.1998) ("While there are circumstances when this result will seem harsh, it is well within the Legislature's prerogative to prescribe the limitations period for a wrongful death claim which, it must be remembered,

## III. Chapter 103 and Other Claims

■ With respect Danziger's suit on his own Chapter 103 claim, the State filed a jurisdictional plea asserting that sovereign immunity was not waived because his earlier settlements barred any claim under Chapter 103. Again, to resolve this question we turn to the words of the statute,[31] which includes the following:

A person who receives compensation under this chapter may not bring any action involving the same subject matter, including an action involving the person's arrest, conviction, or length of confinement, against any governmental unit or an employee of any governmental unit.[32]

This provision plainly prohibits those who receive compensation from the State from then suing local government entities or employees.[33] Thus, it grants local government entities a conditional immunity. But it says nothing about granting any immunity to the State. Chapter 103 expressly waives the State's immunity from Chapter 103 suits,[34] and this provision says nothing about reimposing it.

Moreover, this provision explicitly makes sequence important. By limiting this provision to a person who "receives" compensation from the State, the Legislature barred other suits only by those who have Chapter 103 funds in hand, not those

who may be entitled to them in the future. Until receipt occurs, the plain language of the statute does not allow other government entities to use Chapter 103 as a defense.

The State argues this plain-language construction renders the statutory limitation ineffective, as claimants can obtain duplicative recoveries simply by suing government entities in the right order: local government entities first, then the State under Chapter 103. But the statute does not purport to bar duplicative recoveries; had that been the aim, legislators could have said simply that no one can recover both. Instead, the statute grants immunity to local government entities once the State has paid a Chapter 103 claim. So construed, the statute protects local entities from having to add to a settlement by the State, but does not protect the State from having to add to a settlement by local entities or employees. Given the relatively greater resources of the State, we cannot say this construction is so absurd as to require that we ignore the statute's plain language.[35]

Nor are we convinced that this interpretation will frustrate the Legislature's plan by overcompensating those who have been wrongfully imprisoned. As already noted, a judicial claim for compensation is limited to reimbursing economic damages incurred

did not exist at common law and is a creature of statute.").

31. *See PPG Indus.*, 146 S.W.3d at 83.

32. Tex. Civ. Prac. & Rem.Code § 103.153(b).

33. *See id.* §§ 103.153(a) ("In this section, 'employee' and 'governmental unit' have the meanings assigned by Section 101.001."), 101.001(3) (defining "governmental unit" to include the state, its agencies, political subdivisions, and any other organ of government derived from Texas Constitution or laws).

34. *Id.* § 103.101(a).

35. *See* Tex. Gov't Code § 311.021(3) ("In enacting a statute, it is presumed that ... a just and reasonable result is intended...."); *Texas Dep't of Protective and Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 177 (Tex.2004) ("If the statutory text is unambiguous, a court must adopt the interpretation supported by the statute's plain language unless that interpretation would lead to absurd results."); *Gilmore v. Waples*, 108 Tex. 167, 188 S.W. 1037, 1039 (Tex.1916) ("There are instances where the literal meaning of a statute may be disregarded. But it is only where it is perfectly plain that the literal sense works an absurdity or manifest injustice.").

due to wrongful imprisonment. Moreover, Chapter 103 claims must be filed within three years,[36] thus setting a limit on how long a claimant can delay suing the State while pursuing other options. And in all events, payment of a Chapter 103 claim remains contingent on legislative appropriations.[37]

Unlike the assigned claim from Ochoa, Danziger's own Chapter 103 claim does not rely on an implied waiver of sovereign immunity; the issue here is whether sovereign immunity, having been expressly waived, should be impliedly reimposed. Texas law prohibits implied waivers of immunity, but it has never mandated implied reimposition. Certainly the Legislature could waive the State's sovereign immunity only for those who have not sued local entities; but this provision purports only to provide immunity for local entities, not the State. Under these circumstances, we hold that Danziger's previous settlements do not bar his Chapter 103 claim.

### IV. Conclusion

Little need be said in support of the justice of a government attempting to compensate those it has unjustly imprisoned. But at the same time, there are limits to what money can do to restore years of lost freedom. Given the fiscal and policy issues inherent in this balance, a wrongfully imprisoned person is entitled to what the law allows, neither more nor less. Accordingly, we reverse the court of appeals' judgment allowing Danziger to pursue Ochoa's claim under Chapter 103, but affirm its judgment allowing him to pursue

his own. We remand to the trial court for further proceedings consistent with this opinion.

---

36. Tex. Civ. Prac. & Rem.Code § 103.003.

37. *Id.* § 103.152:

 (a) Not later than November 1 of each even-numbered year, the comptroller shall provide a list of claimants entitled to payment under [this Chapter] ... so that the legislature may appropriate the amount needed to pay each claimant the amount owed.

 (b) Not later than September 1 of the year in which an appropriation under this chapter has been made by the legislature, the comptroller shall pay the required amount to each claimant.