# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-09-00461-CV

**First-Citizens Bank & Trust Company, Appellant**

**v.**

**Greater Austin Area Telecommunications Network**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT**
**NO. D-1-GN-08-002041, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING**

---

### NO. 03-09-00462-CV

**First-Citizens Bank & Trust Company, Appellant**

**v.**

**Austin Independent School District, Appellees**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT**
**NO. D-1-GN-08-002042, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING**

---

## O P I N I O N

Appellant First-Citizens Bank & Trust Company (the "Bank"), a putative assignee

of a contractor's accounts receivable, sued appellees Greater Austin Area Telecommunications

Network, an interlocal administrative agency, and Austin Independent School District (collectively

the "government defendants") for breach of contract. The government defendants filed a plea to the jurisdiction, asserting that sovereign immunity barred the Bank's suit. The judge who conducted an evidentiary hearing on the plea died before ruling on the matter; a different judge later granted the plea. The Bank appeals in two issues, asserting that (1) the trial court has jurisdiction here because the local government code waives sovereign immunity for an assignee to sue for breach of an assignor's contract, and (2) the successor judge improperly ruled on the government defendants' plea without "hearing evidence." We will reverse the trial court's order and remand the cause for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Complete Communication Services, Inc. d/b/a CoCom Cabling Systems ("CoCom") sold communications cabling and installation services to the government defendants pursuant to a contract (the "construction contract"). CoCom also entered into an "accounts receivable purchase and security agreement" (the "assignment contract") with the Bank, by which CoCom assigned its accounts receivable to the Bank in exchange for cash.[1] The government defendants made payments

---

[1] The government defendants argue that the accounts receivable purchase and security agreement was not an assignment, but was simply a "purchase" of CoCom's accounts receivable. We disagree.

The contract between CoCom and the Bank is in the record. Its terms plainly indicate that CoCom "agrees to sell and assign" to the Bank "obligation[s] owed to [CoCom] for goods sold and delivered or services rendered." The contract also appoints the Bank as CoCom's attorney in fact to "demand, take or bring, in the name of the Bank or Client, all steps, actions, suits or proceedings deemed by the Bank in its sole and absolute discretion necessary or desirable to effect collection of or other realization upon the purchased accounts." Such language establishes an assignment here.

In addition, the government defendants themselves have, in their briefing, characterized the

2

on the construction contract to the Bank as CoCom's assignee for some time but later, for reasons that are not clear from the record, stopped paying.

The Bank, as the assignee of CoCom's accounts receivable, brought suit against the government defendants for breach of contract. The government defendants filed a plea to the jurisdiction asserting that (1) CoCom's assignment of its right to payment was invalid because the construction contract contained a no-assignment clause, and (2) even if the assignment was valid, sovereign immunity from suit had not been waived.

Travis County District Judge Scott Ozmun heard the plea in an evidentiary hearing, but he died before ruling on it. The case was later assigned to Judge Lora Livingston who, after reconsidering the evidence on the Bank's motion, signed an order granting the government defendants' plea to the jurisdiction and dismissing the cause for lack of subject-matter jurisdiction.

The Bank appeals in two issues. It argues first that it was a lawful assignee of CoCom's right to payment under CoCom's contract with the government defendants, and, as such, local government code section 271.152 waives sovereign immunity for the Bank's suit to adjudicate a breach of the construction contract. In its second issue, the Bank requests a remand for reconsideration of the plea to the jurisdiction, asserting that the trial court erred when, after the death of Judge Ozmun, his successor on the case granted the plea without "hearing evidence" anew.

---

contract at issue as an "assignment contract," going so far as to state: "The sole purpose of the [accounts receivable purchase contract] is the assignment of accounts receivable from CoCom to [the Bank]."

3

**STANDARD OF REVIEW**

Sovereign immunity deprives the trial court of subject-matter jurisdiction in cases where the State has been sued, absent a waiver of immunity by the State. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004).[2] Sovereign immunity encompasses two concepts: immunity from liability and immunity from suit. *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). By entering into a contract, a governmental entity waives its immunity from liability but retains its immunity from suit unless a waiver is effected by clear and unambiguous statutory language. *Id.*; *see also* Tex. Gov't Code Ann. § 311.034 (West Supp. 2009); *but see Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 375 (Tex. 2006) (noting that sovereign immunity is creature of common law whose boundaries are set and may be altered by courts). To affirmatively demonstrate the trial court's jurisdiction, the plaintiff in a suit against the State or a governmental entity must allege a valid waiver of immunity, which may be either a reference to a statute or to express legislative permission. *Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 637 (Tex. 1999).

Whether a court has subject-matter jurisdiction is a question of law, which we review de novo. *Miranda*, 133 S.W.3d at 224. When reviewing a grant or denial of a plea to the jurisdiction, we consider the plaintiff's pleadings, construed in favor of the plaintiff, and any evidence relevant to jurisdiction without considering the merits of the claim beyond the extent

---

[2] A related doctrine, governmental immunity, similarly protects other governmental subdivisions and entities. *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *see also Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003) (noting that courts often use governmental immunity and sovereign immunity interchangeably although doctrines are conceptually different).

necessary to determine jurisdiction. *Id.* at 226-27; *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).

When a plea to the jurisdiction challenges the pleadings, we determine whether the plaintiff has alleged sufficient jurisdictional facts to show the trial court's subject-matter jurisdiction, using a liberal construction in favor of the plaintiff. *Miranda*, 133 S.W.3d at 226. If the plaintiff's pleadings "affirmatively negate the existence of jurisdiction," then a plea to the jurisdiction may be granted without affording the plaintiff an opportunity to amend his pleadings. *Id.* at 226-27. If, however, the pleadings do not "demonstrate incurable defects in jurisdiction," but merely fail to allege sufficient facts to affirmatively demonstrate the trial court's jurisdiction, then the issue is one of pleading sufficiency and the plaintiff should have an opportunity to amend. *Id.*

"[I]f a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do." *Id*. at 227. Where the jurisdictional facts do not implicate the merits of the suit and the facts are disputed, the court must make the necessary fact findings to resolve the jurisdictional issue. *Id.* If the jurisdictional facts *do* implicate the merits of the suit, the judge must apply a summary judgment-like standard to the evidence submitted. *Id.* If a fact question exists on the disputed jurisdictional issues, the court cannot grant the plea to the jurisdiction; the fact question must be resolved by the fact finder. "However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Id.* at 228.

5

In its first issue, the Bank argues that the trial court erred in granting the government defendants' plea to the jurisdiction. It asserts that it affirmatively demonstrated the trial court's jurisdiction by pleading facts that cause its suit to fall within the waiver of sovereign immunity contained in local government code section 271.152. The Bank pleaded that (1) CoCom had a contract with the government defendants to provide goods and services, (2) the Bank purchased an assignment of CoCom's accounts receivable, (3) among those accounts receivable were unpaid amounts owed to CoCom by the government defendants under the construction contract, and (4) section 271.152 of the local government code waived sovereign immunity for the Bank's suit to recover money owed to CoCom on the construction contract.

The government defendants respond that (1) the construction contract contained a no-assignment clause, which invalidated CoCom's purported assignment; (2) even if the assignment was valid, section 271.152 does not waive their sovereign immunity to a suit brought by the Bank because the Bank was an assignee, not a party to the construction contract; and (3) the Bank lacks standing to bring claims here because it never entered into a contract with the government defendants. The government defendants attached evidence to their plea. That evidence, however, is not probative of the existence of any disputed jurisdictional facts. Moreover, the government defendants did not attach the construction contract, so we cannot determine if their argument that the contract prohibits this assignment—and the Bank's counter-argument that the UCC trumps the

6

no-assignment clause—has merit.[3]  In the absence of relevant evidence creating a fact question as to the existence of the Bank's pleaded jurisdictional facts, we decide the plea to the jurisdiction as a matter of law.  *Miranda*, 133 S.W.3d at 228.  In doing so, we take as true the Bank's pleaded jurisdictional facts.  *See id.* at 227-28.  Our inquiry here is thus focused on the jurisdictional facts in the Bank's live pleading.  If the Bank pleaded facts that, if true, demonstrate a waiver of sovereign immunity, then granting the plea was improper.

As noted above, the Bank relies on section 271.152 of the local government code for that waiver.  That section states:

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

Tex. Loc. Gov't Code Ann. § 271.152 (West 2006).  A contract subject to this subchapter "means a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity."  *Id.* § 271.151(2) (West 2006).

The parties do not dispute that the government defendants are local governmental entities authorized to enter into a contract; nor do they dispute that the contract between the

---

[3]  It is not necessary to have the construction contract in the record for us to decide this initial jurisdictional inquiry.  *See Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Texas Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 327-28 (Tex. 2006) (deciding waiver under local government code section 271.152 based on pleaded allegation of terms of contract when actual contract was not in record).

7

government defendants and CoCom was "subject to [subchapter I]." Liberally construing the Bank's pleadings, we take as true the Bank's pleaded allegation that CoCom's accounts receivable, including its right to bring suit to enforce payment under the construction contract, were validly assigned to the Bank. The remaining questions, therefore, are whether the Bank has standing here and, if so, whether section 271.152 of the local government code waives sovereign immunity for a breach-of-contract suit brought by an assignee.

### The Bank's Standing

We first address the Bank's standing. The government defendants argue that the Bank does not have standing because it was not a party to the construction contract. The Bank asserts that it is suing as CoCom's assignee under the construction contract and has standing by virtue of that assignment.

Standing is a component of subject-matter jurisdiction. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005). One way to establish standing in a breach-of-contract action is to show privity with the defendant. *See Interstate Contracting Corp. v. City of Dallas*, 135 S.W.3d 605, 618 (Tex. 2004) (citing *Brown v. Todd*, 53 S.W.3d 297, 305 (Tex. 2001)); *Redmon v. Griffith*, 202 S.W.3d 225, 239 (Tex. App.—Tyler 2006, pet. denied). For purposes of standing, "[p]rivity is established by proving that the defendant was a party to an enforceable contract with either the plaintiff or a party who assigned its cause of action to the plaintiff." *Redmon*, 202 S.W.3d at 239. An assignee stands in the shoes of the assignor and may assert those rights that the assignor could assert, including bringing suit. *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 420 (Tex. 2000); *see also Jackson v. Thweatt*, 883 S.W.2d 171, 175 (Tex. 1994) ("[A]n assignee receives the

8

full rights of the assignor . . . .").[4]  Thus, the Bank, as CoCom's assignee, has standing to assert CoCom's claims and defenses under the contract.

This case is distinguishable from *State v. Oakley*, in which the Texas Supreme Court held that a cause of action under civil practice and remedies code chapter 103—the chapter that waives sovereign immunity for suits against the State for wrongful imprisonment—was not assignable. 227 S.W.3d 58, 61-62 (Tex. 2007).  In *Oakley*, the assignee of a wrongfully imprisoned individual's claim asserted that because chapter 103 was silent as to assignments, the court should apply the common-law rule permitting the sale and assignment of causes of action.  He urged the court to hold that (1) an assignee had standing to sue, and (2) sovereign immunity was waived for an assignee's suit.  *Id.* at 61.  Addressing the standing argument as a threshold inquiry, the court noted that chapter 103 explicitly prohibits survivability of a wrongful-imprisonment cause of action. *Id.*  Noting that assignability and survivability have long been linked in American and Texas law, the court concluded that the legislature's decision to extinguish the chapter 103 cause of action on the death of the wrongfully imprisoned person also prohibited assigning the claim.  *Id.* at 62.

The present case differs from *Oakley* in a crucial way.  While the statute in *Oakley* waived sovereign immunity, it also *created* the cause of action on which Oakley sued the State.  It was, therefore, necessary for the court to look at the statute itself to determine whether the wrongful-death cause of action was assignable.  *See id.* ("As Chapter 103 claims are entirely a

---

[4]  We note that public policy strongly favors assignability of contracts.  *See State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 706-07 (Tex. 1996) (discussing historical development of free assignability of contract and tort causes of action in Anglo-American law and limited exceptions to general rule of assignability).

9

statutory creation, we look to the words of the statute to determine whether they are assignable.").

Here, however, the opposite holds true. *Cf. id.* The statute at issue does not *create* the breach-of-contract cause of action against the State, it merely waives sovereign immunity for certain existing common-law breach-of-contract claims. Thus, we look to the statute not to determine if the claims are assignable but only to see if sovereign immunity is waived.

### Local Government Code Section 271.152 Waives Immunity for Assignees

Concluding that the Bank has standing here, we must now decide whether section 271.152 of the local government code waives the government defendants' immunity from a suit brought by an assignee. This requires interpreting several statutes. Our objective in interpreting any statute is to determine legislative intent. *Mid-Century Ins. Co. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007). We look to the statute's plain meaning and construe it as a whole to give effect to every part, *see id.*, unless such a construction would lead to absurd or nonsensical results, *FKM P'ship v. Board of Regents of Univ. of Houston Sys.*, 255 S.W.3d 619, 633 (Tex. 2008); *see also Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999) ("[I]t is a fair assumption that the Legislature tries to say what it means, and therefore the words it chooses should be the surest guide to legislative intent."). We may consider the object of the statute, legislative history, and the consequences of a proposed construction. Tex. Gov't Code Ann. § 311.023(1), (3), (5) (West 2005). In deciding whether a statute waives sovereign immunity, we bear in mind that a legislative waiver must be "effected by clear and unambiguous language." *Id.* § 311.034.

As quoted above, section 271.152 of the local government code waives sovereign immunity "for the purpose of adjudicating a claim for breach of the contract, subject to the terms and

10

conditions of [subchapter I]" if the local government entity "enters into a contract subject to [subchapter I]." By its own terms, section 271.152's waiver is not limited only to suits brought by signatory parties—that is, to contractors who directly contract with the local government entity. Instead, section 271.152 waives immunity for a *class of suits*—suits for the purpose of adjudicating a claim for breach of a contract subject to subchapter I—without restricting which parties can bring the suit. The logical implication of such statutory language is that when, as here, a plaintiff has standing to sue a local government entity for breach of a "contract subject to [subchapter I]," section 271.152 waives sovereign immunity "for the purpose of adjudicating [that] claim."

As section 271.152 waives immunity "subject to [subchapter I]," we must examine the entire subchapter to determine if the legislature intended waiver to apply to assignees. *See Ademaj*, 243 S.W.3d at 621. Subchapter I encompasses sections 271.151 through 271.160, which (1) define the terms used in the subchapter; (2) provide for waiver; (3) limit the amount and types of damages that may be awarded in a suit; (4) make enforceable any special contracted-for adjudication procedures like alternative-dispute resolution or pre-suit notice; (5) clarify that this subchapter does not waive the governmental entities' defenses, immunity to suit in federal court, or immunity to liability in tort; (6) note that this subchapter is not the basis of the *grant* of immunity to suit to a local governmental entity; and (7) prohibit the recovery of attorney's fees absent a contractual provision allowing prevailing parties to recover. *See* Tex. Loc. Gov't Code Ann. §§ 271.151-.160 (West 2006 & West Supp. 2009). None of the subchapter's provisions limit *who* can bring a suit on the contract. Nor do they suggest that the legislature intended to exclude assignees from the reach of section 271.152.

The legislative history of subchapter I also suggests that the legislature intended to enact a relatively broad waiver. The supreme court noted in *Ben Bolt* that "by enacting section 271.152, the Legislature intended to loosen the immunity bar so 'that all local government entities that have been given or are given the statutory authority to enter into contracts shall not be immune from suits arising from those contracts.'" *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Texas Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 327 (Tex. 2006) (quoting House Comm. on Civil Practices, Bill Analysis, Tex. H.B. 2039, 79th Leg., R.S. (2005)). The bill analysis also suggests that part of the impetus for House Bill 2039 was to address the fundamental unfairness inherent in allowing governmental entities to use sovereign immunity as a shield to avoid their contractual obligations. House Comm. on Civil Practices, Bill Analysis, Tex. H.B. 2039, 79th Leg., R.S. (2005).

Supporters of the bill asserted that, because of the threat of sovereign immunity, many highly qualified contractors considered bidding on local government contracts too risky, leading many contractors, especially small businesses, not to bid at all. *Id*. Supporters thought there was a risk that those who did bid would submit artificially inflated bids or potentially perform substandard work as a form of "insurance" against the possibility of the governmental entity's non-redressable breach. *Id.* Subchapter I was intended to address those complaints and encourage a broader, more qualified, and more diverse range of bidders for local-government contracts and to lower the price of those contracts by reducing the risk of non-redressable breach. *Id.*

It would be inconsistent with the statute's purpose, therefore, to construe subchapter I as denying waiver to assignees of local-government contracts. Such a construction would risk

12

raising the cost of financing, as financiers like the Bank might be reluctant to purchase a contractor's accounts receivable if they thought sovereign immunity would expose them to the same risk of non-redressable breach that the statute sought to eliminate. That could result in the same problems of inflated bids, reduced numbers and types of bidders, and higher costs to local governments that the legislature sought to remedy.

For the reasons discussed above, we conclude that, in enacting section 271.152, the legislature waived sovereign immunity for suits brought by assignees of those who enter into contracts that are subject to subchapter I. Contrary to the government defendants' assertions, our conclusion here does not expand the unambiguous legislative waiver of sovereign immunity in section 271.152. To the contrary, first and foremost, the plain language of subchapter I compels our decision here. *See Fitzgerald*, 996 S.W.2d at 866 ("[I]t is a fair assumption that the Legislature tries to say what it means, and therefore the words it chooses should be the surest guide to legislative intent."). Further, allowing the Bank, as CoCom's assignee, to bring claims to enforce CoCom's contract with the government defendants does not subject them to additional liability. The government defendants' maximum liability is still capped by subsection I's provisions limiting recovery to "the balance due and owed" on the contract plus any valid change orders and interest as allowed by law. *See* Tex. Loc. Gov't Code Ann. § 271.153 (West Supp. 2009). As the Bank stands in CoCom's shoes, its claim against the government defendants is only as good as CoCom's; the claim will succeed or fail as it would if CoCom itself were suing the government defendants. Recognizing waiver here also facilitates financing by contracting parties, furthering the statute's

13

objective of lowering costs to contractors and encouraging more diverse bidders to bid for government contracts.

Because we hold that local government code section 271.152 waives sovereign immunity here, we hold that the Bank's live pleading affirmatively demonstrated the trial court's jurisdiction. The court therefore erred in granting the government defendants' plea to the jurisdiction. We sustain the Bank's first issue. Having done so, we need not reach their second.

## CONCLUSION

Having held that the Bank's pleaded jurisdictional facts affirmatively demonstrate the trial court's subject-matter jurisdiction, we reverse the order of the trial court and remand the cause to that court for further proceedings.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Reversed and Remanded

Filed: August 6, 2010