# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

July 7, 2017

Lyle W. Cayce
Clerk

No. 16-20465

———

ASSOCIATED INTERNATIONAL INSURANCE COMPANY, Individually
and as subrogee of Alpha Barnes Real Estate Services, L.L.C.,

      Plaintiff - Appellant

v.

SCOTTSDALE INSURANCE COMPANY,

      Defendant - Appellee

———————————

Appeal from the United States District Court
for the Southern District of Texas

———————————

Before REAVLEY, HAYNES, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:

Subrogation clauses are common in insurance policies. They transfer rights from the insured to the insurer, allowing the latter to recover funds it paid to cover the former's loss. We decide whether the rights that flow through a subrogation clause allow an insurer to seek reformation of a contract between its insured and a third party.

I.

This Texas insurance case arose from an assault in an apartment complex owned by VDC-Matthew Ridge, Ltd. The plaintiff in that lawsuit

sought recovery from Matthew Ridge and the property manager of the complex, Alpha-Barnes Real Estate Services, LLC. The lawsuit settled.

Matthew Ridge had an insurance policy issued by Westfield Insurance Company that extended to Alpha Barnes through its role as Matthew Ridge's property manager. Westfield exhausted that policy in defending and settling the lawsuit for both the apartment complex and property manager. Matthew Ridge's commercial umbrella insurer, Associated International Insurance Company, paid the portion of the settlement that was in excess of the Westfield policy. Associated now seeks reimbursement from Scottsdale Insurance Company, an insurer that issued a commercial umbrella policy to Alpha. It does so despite that policy not listing the complex on the schedule of covered properties.

Associated asserts it can seek reimbursement from Scottsdale on Alpha's behalf through a subrogation clause in the policy it issued to Alpha. That clause states that "if [Alpha] has rights to recover all or part of any payment [Associated has] made under [the] policy, those rights are transferred to [Associated]." But how can Associated seek reimbursement from Scottsdale when the umbrella policy does not list the property at issue? Associated contends that it can reform the Alpha-Scottsdale agreement to include the apartment complex because it was omitted due to a mutual mistake between those contracting parties.

The district court rejected this argument, first in an unexplained order dismissing Associated's claim at the pleading stage under Rules 12(b)(1) and 12(b)(6), and later in a brief opinion denying Associated's motion for reconsideration. The district court concluded that Associated had no standing to seek reformation because it was not in privity with the Alpha-Scottsdale "agreement." Associated appeals, arguing that it has standing as a subrogee to seek reformation on its insured's behalf.

No. 16-20465

II.

Despite the ubiquity of subrogation clauses, Texas law has not addressed whether a subrogation clause allows a subrogee to assert a reformation claim on a contract between its subrogor and a third party.  As we answer it in the first instance, we keep in mind the longstanding principle of Texas courts to "recognize the [subrogation] doctrine . . . to its fullest extent." *Frymire Eng'g Co. ex rel. Liberty Mut. Ins.  v. Jomar Int'l., Ltd.*, 259 S.W.3d 140, 141 (Tex. 2008) (quoting *Faires v. Cockrill*, 31 S.W. 190, 194 (1895) (noting that "the courts of no state have gone further" than Texas "in applying the doctrine of subrogation")).

"Subrogation is the substitution of one party for another such that the new party may assert the rights of the substituted party." *Cont'l Cas. Co. v. N. Am. Capacity Ins. Co.*, 683 F.3d 79, 85 (5th Cir. 2012).  Without subrogation, the only ways to prevent an insured from obtaining a double recovery would be to delay the insurer's payment until recovery from a third party could be had or to disallow an insured from recovering from a third party once the insurer paid out the claim.  The former could cause delay in insurance companies paying claims to make injured parties whole; the latter could allow tortfeasors to escape liability.  LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 222:4 (3d ed. 2005).  Subrogation avoids these unfavorable outcomes by permitting an insurer to "stand in the shoes of the insured," allowing the insurer to assert any claims or rights held by the insured against a third party. *Mid-Continent Ins. v. Liberty Mut. Ins.*, 236 S.W.3d 765, 774 (Tex. 2007); *see also Am. Centennial Ins. Co. v. Canal Ins. Co.*, 843 S.W.2d 480, 484 (Tex. 1992) (allowing a subrogee to assert a legal malpractice claim against the subrogor's defense attorney).

Do those rights that pass to the subrogee include the right to reform a contract? Reformation allows parties to correct a mutual mistake made in

3

drafting a contract, "so that the instrument truly reflects the original agreement of the parties." *Simpson v. Curtis*, 351 S.W.3d 374, 378 (Tex. App.—Tyler 2010, no pet.) (citing *Cherokee Water Co. v. Forderhause*, 741 S.W.2d 377, 379 (Tex. 1987)).  Reformation may be sought by either the parties to the original contract or those standing in privity with them.  *Merrimack Mut. Fire Ins. Co. v. Allied Fairbanks Bank*, 678 S.W.2d 574, 577 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

The district court erred in reading reformation's privity requirement to necessitate a specific connection to the Alpha-Scottsdale insurance policy.  Privity in Texas instead focuses on the relationship to a party.  *See id.* ("Reformation is an action on a written contract and may be had only by the immediate parties thereto and by those standing in privity with them."); *First-Citizens Bank & Trust Co. v. Greater Austin Area Telecomm. Network*, 318 S.W.3d 560, 566 (Tex. App.—Austin 2010, no pet.) ("[P]rivity is established by proving that the defendant was a party to an enforceable contract with either the plaintiff or a party who assigned its cause of action to the plaintiff."); *see also* PRIVITY, BLACK'S LAW DICTIONARY 1320 (9th ed. 2009) ("The connection or relationship between two parties, each having a legally recognized interest in the same subject matter.").

So the standing question turns on whether Associated is in privity with Alpha.  The subrogation clause in the Associated-Alpha policy provides that connection.  Courts generally treat subrogation as placing an insurer-subrogee in privity with its insured.  *See, e.g., St. Paul Fire & Marine Ins. v. State Volunteer Mut. Ins. Co.*, 212 F.3d 595 (5th Cir. 2000) (unpublished table decision) (holding, under Mississippi law, that a subrogee is in privity with a subrogor, allowing the subrogee to challenge a contract between the subrogor and a third party); *D'Arata v. New York Cent. Mut. Fire Ins. Co.*, 564 N.E.2d 634, 665 (N.Y. 1990) (noting that a subrogee is in privity with an insured as it

"stands in the shoes" of the insured for preclusion purposes); *DeCare v. American Fidelity Fire Ins. Co.*, 360 N.W.2d 872, 876 (Mich. Ct. App. 1984) (applying *res judicata* because the subrogee "stood in [the subrogor's] shoes" and thus was in privity); *Ohio Dept. of Human Serv. v. Kozar*, 651 N.E.2d 1039, 1041 (Ohio Ct. App. 1995) (same). This makes sense as subrogation works much like an assignment; both transfer rights from the assignor to the assignee. *See Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 397 (5th Cir. 2002) (Garza, J., concurring) ("[I]n essence, subrogation is an assignment."); COUCH ON INSURANCE § 222:54 (noting that the distinction between assignment and subrogation may be "academic and not a substantive matter"). And it is well accepted that an assignment creates privity. *First-Citizens Bank & Trust Co.*, 318 S.W.3d at 566. As subrogees stand in the shoes of their insureds just like assignees "stand[ ] in the shoes of [ ] assignor[s]," *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 420 (Tex. 2000), the privity necessary for reformation logically extends to the subrogation context.[1]

Despite the broad rights Texas grants subrogees, Scottsdale tries to find a limit in cases preventing subrogees from recovering certain types of damages. They may not, for example, seek statutory or punitive damages. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Ins. Co. of N. Am.*, 955 S.W.2d 120, 133 (Tex. App.—Houston [14th Dist.] 1997), *aff'd sub nom. Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 20 S.W.3d 692 (Tex. 2000). Those rules

---

[1] Scottsdale asserts that New Jersey has held that subrogation does not create privity. *Kolker Chem. Corp. v. Lumbermens Mut. Cas. Co.*, 196 A.2d 266 (1963). *Kolker* held that a subrogee has standing to seek reformation of a contract if it has a substantial interest in that contract. *Id.* at 268–69. Scottsdale reads this to mean that subrogation does not create privity. But *Kolker* made no such finding, as it only held that a substantial interest was enough without opining on what role privity plays. Even if New Jersey law did reject privity in this situation, more persuasive is the Texas jurisprudence repeatedly stating that a subrogee "stands in the shoes" of the insured and the prevailing view that subrogation creates privity.

follow from the equitable purpose of subrogation which is to allow the subrogee to seek recovery of amounts it paid to the insured. *Id*. Texas does not allow the subrogee to end up better off as a result of paying the insured by obtaining amounts from a third party beyond what it covered. But that is not what Associated is seeking through its reformation claim. It seeks reformation as an avenue to recover what it paid, not to obtain a windfall from its insured's filing of a claim.

Scottsdale also points out that it may not always be in the insured's interest for a subrogee to seek reformation of the contract. Perhaps the contracting parties' mistake provided an overall benefit to the insured, as a successful reformation claim could result in a higher premium or a different list of covered properties. But an insured's displeasure with its insurer's litigation decisions is a not infrequent consequence of the subrogee getting to step into its shoes. An insurer may, for example, pursue a subrogation claim against a business with whom the insured wants to maintain cordial relations, or against a doctor with whom the insured has a close relationship. In those cases, the insured gets no say in the subrogee's decision to bring suit. *Cf. Prudential Prop. & Cas. Co. v. Dow Chevrolet-Olds, Inc.*, 10 S.W.3d 97, 100 (Tex. App.—Texarkana 1999, pet. dism'd) (explaining that an insurer "can assert its subrogation claim independently of the insured" in reversing dismissal against insurance company because its insured refused to appear for deposition). The same is true here. And the reformation claim, if successful, would only return the insured to the agreement it intended to make in the first place. It would not impose obligations on the insured to which it never agreed. *Cherokee Water Co.*, 741 S.W.2d at 379 ("The underlying objective of reformation is to correct a mutual mistake . . . so that the instrument truly reflects the *original* agreement of the parties.").

No. 16-20465

We have no basis for considering the merits of that reformation claim as the case was dismissed on standing grounds at the pleading stage. That judgment of the district court is REVERSED and we REMAND for further proceedings during which the merits of reformation can be considered.