# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ISAIAH WILLIAM NEWTON, JR., | No. 47066-7-II |
| Appellant, | |
| v. | |
| STATE OF WASHINGTON, | PUBLISHED OPINION |
| Respondent. | |

MAXA, J. — Isaiah Newton appeals the trial court's grant of summary judgment in favor of the State and denial of his partial summary judgment motion under the Wrongly Convicted Persons Act, chapter 4.100 RCW (the Act). Newton filed a lawsuit against the State seeking compensation for wrongful conviction and incarceration after Division Three of this court reversed his conviction for first degree burglary based on insufficiency of the evidence presented at trial.

One requirement for the State's liability under the Act is that the claimant's conviction be reversed "on the basis of significant new exculpatory information." RCW 4.100.040(1)(c)(ii). We hold that "significant new exculpatory information" does not include an appellate opinion reversing the claimant's conviction based on insufficiency of the evidence presented at trial. Here, the reversal of Newton's conviction was based on insufficiency of the existing evidence, not on any new exculpatory information. Accordingly, we affirm the trial court's grant of

summary judgment in favor of the State and the trial court's denial of Newton's partial summary judgment motion.[1]

FACTS

Early in the morning on May 18, 2012, Newton was in a hallucinogenic state and believed that God had given his disabled mother, Volinda Williams, the ability to walk again. Newton went to Williams' home and entered through her closed but unsecured bedroom window. Once inside the home, Newton attempted to show Williams, who is confined to a wheelchair, that she could walk. Over Williams' objections, Newton struggled to pick Williams up and get her to her feet, and both ended up falling to the floor. Williams was not injured. Neighbors heard shouting and the fall and called 911. When the responding officers ordered Newton to release Williams, he did not comply. Police used an electroshock weapon and struggled to handcuff Newton.

The State charged Newton with first degree burglary, a felony, and resisting arrest, a misdemeanor. A jury found Newton guilty of both charges. The trial court sentenced Newton to 87 months of confinement for the burglary conviction and 90 days for the resisting arrest conviction, with both sentences to run concurrently. Newton appealed his convictions.

Division Three of this court reversed Newton's burglary conviction. The court held that the State provided insufficient evidence to support the conviction because it failed to show that Newton possessed the intent to commit a crime. The court concluded, "While a rational jury

---

[1] The State also argues that Newton cannot satisfy the "actually innocent" requirement under the Act because he engaged in illegal conduct in entering his mother's house even if that conduct did not amount to a burglary as charged. Because we affirm on other grounds, we do not address this issue.

could, viewing the evidence in the light most favorable to the State, find he entered or remained unlawfully in Ms. Williams' bedroom beyond a reasonable doubt, no evidence shows his intent was anything other than to show her she could walk." Clerk's Papers (CP) at 83. Accordingly, the court directed the trial court to dismiss the burglary charge. The court affirmed Newton's resisting arrest conviction.

On May 2, 2014, pursuant to the Court of Appeals opinion, the trial court entered an order to release Newton from prison. Newton alleges that he spent 717 days in custody because of the burglary conviction in addition to the 90 days he served concurrently for both the burglary conviction and the resisting arrest conviction.

Newton filed a lawsuit against the State under the Wrongly Convicted Persons Act for wrongful conviction and incarceration. Newton subsequently filed a motion for partial summary judgment on the issue of liability. The State filed a cross motion for summary judgment. The trial court denied Newton's motion and granted the State's motion. The trial court based its decision on its conclusion that an appellate opinion reversing a conviction is not "significant new exculpatory information" under the Act.

Newton appeals the trial court's grant of summary judgment in favor of the State and the denial of his partial summary judgment motion.

ANALYSIS

A.    WRONGLY CONVICTED PERSONS ACT

In 2013, the legislature enacted the Wrongly Convicted Persons Act, chapter 4.100 RCW. RCW 4.100.010 states the legislative intent:

> The legislature recognizes that persons convicted and imprisoned for crimes they did not commit have been uniquely victimized. . . . The legislature intends to

3

provide an avenue for those who have been wrongly convicted in Washington state to redress the lost years of their lives, and help to address the unique challenges faced by the wrongly convicted after exoneration.

RCW 4.100.020(2)(b) states that a person is "wrongly convicted" if he or she was "charged, convicted, and imprisoned for one or more felonies of which he or she is actually innocent."

RCW 4.100.020(1) states the Act's general rule:

Any person convicted in superior court and subsequently imprisoned for one or more felonies of which he or she is actually innocent may file a claim for compensation against the state.

RCW 4.100.020(2)(a) states that a person is "actually innocent" of a felony if he or she "did not engage in any illegal conduct alleged in the charging documents."

RCW 4.100.040(1) and (2) state that in order to file an "actionable claim for compensation" under the Act, the claimant must establish certain elements. One of the elements is that "[t]he claimant's judgment of conviction was reversed or vacated and the charging document dismissed on the basis of significant new exculpatory information." RCW 4.100.040(1)(c)(ii).

RCW 4.100.060(1) further states that "[i]n order to obtain a judgment in his or her favor, the claimant must show by clear and convincing evidence" several elements that are identical to the elements stated in RCW 4.100.040(1) and (2).[2] The requirement that the claimant's

---

[2] It is unclear why the Act contains one section stating the requirements to file an actionable claim for compensation (RCW 4.100.040(1)-(2)) and a separate section stating in identical language the requirements to obtain a judgment (RCW 4.100.060(1)). The only apparent difference between the sections is that the claimant must establish the requirements for filing an actionable claim by documentary evidence and must establish the requirements for obtaining a judgment by clear and convincing evidence. Because this case involves interpretation of the identical language in both sections, we cite to both sections.

conviction be reversed "on the basis of significant new exculpatory information" is stated in RCW 4.100.060(1)(c)(ii).

The issue here is whether Newton can satisfy the Act's "significant new exculpatory information" requirement based on an appellate court reversing his conviction because of insufficient evidence at trial.

B.      STATUTORY INTERPRETATION

In order to address this issue, we must interpret the term "significant new exculpatory information" as used in the Act.  No Washington appellate court has addressed the meaning of this term or has interpreted any portion of the Act.

Statutory interpretation is a matter of law that we review de novo.  *Jametsky v. Olsen*, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014).  The primary goal of statutory interpretation is to determine and give effect to the legislature's intent.  *Id*. at 762.  To determine legislative intent, we first look to the plain language of the statute.  *Id*.  In evaluating the statute's language we consider "the language of the provision in question, the context of the statute in which the provision is found, and related statutes."  *Columbia Riverkeeper v. Port of Vancouver USA*, 189 Wn. App. 800, 810, 357 P.3d 710 (2015).

To discern the plain meaning of undefined statutory language, we give words their usual and ordinary meaning and interpret them in the context of the statute in which they appear. *AllianceOne Receivables Mgmt., Inc. v. Lewis*, 180 Wn.2d 389, 395-96, 325 P.3d 904 (2014).  If the plain meaning of a statute is unambiguous, we must apply that plain meaning as an expression of legislative intent without considering extrinsic sources.  *Jametsky*, 179 Wn.2d at

762. We do not rewrite unambiguous statutory language under the guise of interpretation. *Cerrillo v. Esparza*, 158 Wn.2d 194, 201, 142 P.3d 155 (2006).

C.    SIGNIFICANT NEW EXCULPATORY INFORMATION

Newton argues that the Court of Appeals decision reversing his burglary conviction constituted "significant new exculpatory information" as required under RCW 4.100.040(1)(c)(ii) and RCW 4.100.060(1)(c)(ii). We disagree.

Because the Act does not define the term "significant new exculpatory information," we must determine the term's ordinary meaning. *Grant County Prosecuting Att'y v. Jasman*, 183 Wn.2d 633, 643, 354 P.3d 846 (2015). We may use a dictionary to discern the plain meaning of an undefined statutory term. *Nissen v. Pierce County*, 183 Wn.2d 863, 881, 357 P.3d 45 (2015).

The dictionary definition of "exculpatory" is "tending to exculpate." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 794 (2002). The word "exculpate" means "to clear from alleged fault or guilt: prove to be guiltless." *Id*. The word "information" has a number of dictionary definitions, including "the communication or reception of knowledge or intelligence" and "knowledge communicated by others or obtained from investigation, study, or instruction." *Id*. at 1160.

Newton argues that the Court of Appeals opinion falls within the broad definitions of "exculpatory" and "information." The Court of Appeals opinion clearly was exculpatory – it cleared Newton from alleged guilt. And Newton argues that the opinion constitutes information because it is "knowledge communicated by others;" the knowledge is the fact that there was insufficient evidence to convict him of burglary.

However, the term "significant new exculpatory information" must be interpreted in context of the entire subsection. *Nissen*, 183 Wn.2d at 875. RCW 4.100.040(1)(c)(ii) and RCW 4.100.060(1)(c)(ii) state that the claimant must show that his or her conviction was reversed "*on the basis of*" significant new exculpatory information. (Emphasis added.) Under this language, the significant new exculpatory information necessarily refers to something other than the appellate reversal itself. The appellate reversal must be *based on* some new information. Logically, an appellate reversal cannot be based on itself.

Further, we must interpret statutes so that all language is given effect with no portion rendered meaningless or superfluous. *Perez-Farias v. Glob. Horizons, Inc.*, 175 Wn.2d 518, 526, 286 P.3d 46 (2012). Adopting Newton's interpretation would render the "significant new exculpatory information" requirement superfluous. Under RCW 4.100.040(1)(c)(ii) and RCW 4.100.060(1)(c)(ii), reversal of the claimant's conviction is a requirement for recovery. If an appellate court's reversal itself constituted "significant new exculpatory information," *every* reversal of a conviction would be on the basis of such information, and there would be no need to state a separate "significant new exculpatory information" requirement.

We hold that based on the unambiguous statutory language, the term "significant new exculpatory information" does not include an appellate opinion reversing the claimant's conviction based on insufficiency of the evidence presented at trial.

Here, Newton does not present any new exculpatory information that formed the basis of the Court of Appeals' reversal of his conviction. The Court of Appeals' ruling was based on the insufficiency of the existing evidence, not any new evidence. Therefore, Newton cannot satisfy

7

one of the elements for recovery under RCW 4.100.040 and RCW 4.100.060.  We hold that the State was entitled to summary judgment on this basis.

We affirm the trial court's grant of summary judgment in favor of the State and the trial court's denial of Newton's partial summary judgment motion.

MAXA, J.

We concur:

MELNICK, J.

SUTTON, J.