**FILED**
**AUGUST 15, 2019**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| ROBERT E. LARSON; TYLER W. GASSMAN; and, PAUL E. STATLER, | ) ) ) | No. 35649-3-III |
| Appellants, | ) ) | |
| v. | ) ) | PUBLISHED OPINION |
| STATE OF WASHINGTON, | ) ) | |
| Respondent. | ) | |

SIDDOWAY, J. — Robert Larson, Tyler Gassman, and Paul Statler were wrongly convicted of crimes and spent roughly four years in prison before their convictions were vacated and the charges against them were dismissed. They later established their right to assert a claim under Washington's "Wrongfully Convicted Persons Act" (WCPA), chapter 4.100 RCW, which provides damages to a wrongly convicted individual based on years of incarceration, damage-based attorney fees, and certain costs. The three men also filed a federal lawsuit against Spokane County and two of its law enforcement officers under 42 U.S.C. § 1983 (the Section 1983 action). They reached a $2.25 million settlement against the defendants in that lawsuit at around the same time they established their rights under the WCPA.

At issue is whether their judgment for money damages under the WCPA remained viable after the three men settled the Section 1983 action. Given the operative provisions of the WCPA and the legislative intent that its remedies and compensation be exclusive, we hold that their judgment for WCPA compensation no longer remained viable. The superior court's order vacating the judgment is affirmed.

## FACTS AND PROCEDURAL BACKGROUND

In 2008, Messrs. Larson, Gassman, and Statler (the plaintiffs) were arrested in connection with a Spokane robbery. At their trial in February 2009, they presented alibi evidence. A jury nonetheless found each guilty of first degree robbery, first degree assault, and drive-by shooting. Each was sentenced to more than 20 years of incarceration. They began serving their sentences in July 2009.

In 2012, the superior court granted their CrR 7.8 motion for relief from judgment, finding they had received ineffective assistance from trial counsel, who failed to investigate potentially exculpatory evidence. Their convictions were vacated and they were released from prison. Rather than retry them, the State dismissed the charges against them in May and July 2013.

In May 2013, the Washington Legislature enacted the WCPA. LAWS OF 2013, ch. 175. It became effective on July 28, 2013, and afforded individuals wrongly convicted before that date a three year period within which to file suit. *Id.* at § 9 (codified at RCW 4.100.090). It expressly addresses its relationship to other civil remedies that a wrongly

2

convicted person might have. As more fully examined below, it states the intent of the legislature that WCPA remedies and compensation "be exclusive to all other remedies at law and in equity" against the state and its political subdivisions. *Id*. at § 8 (codified at RCW 4.100.080). It effectuates that intent by requiring that a WCPA claimant (1) waive other remedies against the state and certain state actors related to the claimant's wrongful conviction and imprisonment, including remedies under 42 U.S.C. § 1983, (2) execute a legal release before receiving payment of any WCPA compensation, and (3) reimburse the State in whole or in part if the claimant's release is held invalid and the claimant later recovers a tort award.

In January 2014, the plaintiffs brought this action, asserting claims for compensation under the WCPA. At the conclusion of a 2015 bench trial, the superior court concluded they had not met their burden of proof and entered judgment in favor of the State. The plaintiffs appealed. While the State appeal was pending, the plaintiffs filed suit in federal court against Spokane County and two of its law enforcement officers under 42 U.S.C. § 1983.

In June 2016, this court held that the superior court had applied too high a burden of proof on the plaintiffs in certain respects, and remanded for the court to reconsider the required element of actual innocence. *Larson v. State*, 194 Wn. App. 722, 725, 375 P.3d 1096 (2016).

Spokane County responded to this court's revival of the plaintiffs' WCPA claim by moving the federal district court to dismiss the Section 1983 action, citing the WCPA's "exclusive remedy" and waiver language. Reading RCW 4.100.080(1) as a whole, the federal district court construed it as allowing concurrent actions, even though "'[p]laintiffs must execute a legal release of all their other claims, including § 1983 claims, prior to the payment of compensation under the WCPA.'" Clerk's Papers (CP) at 59 (boldface and underscore omitted). Accordingly, the Section 1983 action proceeded, as did the WCPA claim.

In April 2017, after applying the law as clarified by this court, the superior court concluded that the plaintiffs were entitled to recover under the WCPA. The WCPA provides that a wrongfully convicted individual is entitled to $50,000.00 per year of actual incarceration, attorney fees capped at the lesser of 10 percent of the claimant's damages or $75,000, costs, and any child support payments that went unpaid due to a claimant's incarceration. RCW 4.100.060(5)(a), (c), (e). The superior court determined that the plaintiffs were entitled to $710,697.70 in WCPA damages, $78,380.06 in attorney fees and costs, and that Mr. Larson was entitled to $1,299.97 in unpaid child support payments.

In mid-June 2017, the plaintiffs moved the court to enter judgment for their WCPA remedies. The State opposed the motion, notifying the superior court that it had learned on June 26 that the plaintiffs had settled their Section 1983 claims for a total of

$2.5 million. The State also represented that the settlement had been paid, but admitted relying only on hearsay. It argued that having obtained a federal remedy against Spokane County and its officers, the plaintiffs could not recover compensation under the WCPA.

The superior court entered judgment in favor of the plaintiffs, as requested. Although a transcript of the hearing has not been made a part of the record, the superior court would later explain that in entering the judgment, it had

> attempted to emphasize the distinction between obtaining a judgment versus enforcing a judgment. [When the judgment was entered], the plaintiffs hadn't been compensated on their [Section] 1983 claim or there was no evidence that they'd been compensated under their [Section] 1983 claim. Rather, they had just settled the claim. The language consistently used in RCW 4.100 relates to being compensated rather than just making other claims.

Report of Proceedings (RP) at 31-32. The superior court later explained that at the time it agreed to enter judgment,

> I found that the plaintiffs were entitled to a judgment because they had met all the requirements of the statute and there was no evidence that they'd been compensated on another claim. I then predicted everyone would be back when the plaintiffs try to enforce the judgment if they get compensated on their [Section] 1983 claims.

*Id.* at 32. To ensure the State's ability to return to court if the plaintiffs received the federal settlement and then took steps to collect the Washington judgment as well, the judgment provided that "[p]laintiffs shall notify [the State's attorneys] at least 14 days in advance of seeking payment from the State." CP at 105.

5

In August 2017, the plaintiffs sought payment of the state court judgment, moving the superior court to direct the clerk of court to furnish a certified copy of the judgment to the Washington Office of Risk Management. The State opposed their motion and obtained an order to show cause why the court should not vacate the judgment under CR 60(b). This time, the State provided a copy of the Washington Counties Risk Pool check in payment of the settlement amount, which turned out to be $2.25 million.

Following a hearing on the cross motions, the superior court denied the plaintiffs' motion and granted the State's, vacating the plaintiffs' money judgment.[1] The plaintiffs appeal.

## ANALYSIS

I.  FAIRLY READ, THE WCPA CONDITIONS COMPENSATION ON A WRONGLY CONVICTED PERSON'S ABILITY TO PROVIDE AN EFFECTIVE WAIVER AND LEGAL RELEASE OF CLAIMS AGAINST THE STATE AND STATE ACTORS

The appeal presents an issue of statutory construction, which we review de novo. *City of Spokane v. Spokane County*, 158 Wn.2d 661, 672-73, 146 P.3d 893 (2006). "The

---

[1] Although the superior court vacated the entire judgment, it recognized that the plaintiffs might be entitled to their statutory attorney fees and costs and that Mr. Larson might be entitled to his unpaid child support payments. This was based on RCW 4.100.080(1), under which the reimbursement amount to which the State is entitled from an individual who is compensated under the WCPA and receives a tort award related to his or her wrongful conviction excludes past child support awarded pursuant to RCW 4.100.060(5)(c) and attorney fees and costs awarded pursuant to RCW 4.100.060(5)(e). The superior court offered to entertain further argument on that issue.

Without conceding liability for those amounts, the State paid them, so the issue was not decided by the superior court and is not presented for review.

6

court's paramount duty in statutory interpretation is to give effect to the legislature's intent." *In re Pers. Restraint of Nichols*, 120 Wn. App. 425, 431, 85 P.3d 955 (2003). If a statute's meaning is plain on its face, then the court will give effect to that plain meaning as an expression of legislative intent. *State ex rel. Citizens Against Tolls v. Murphy*, 151 Wn.2d 226, 242, 88 P.3d 375 (2004). Plain meaning is discerned not only from the provision in question but also from closely related statutes and the underlying legislative purposes. *Id.* Only if the language is ambiguous do we look to aids of statutory construction, such as legislative history. *State v. Armendariz*, 160 Wn.2d 106, 110-11, 156 P.3d 201 (2007). A statute is ambiguous only if susceptible to two or more reasonable interpretations; it is not ambiguous merely because different interpretations are conceivable. *Burton v. Lehman*, 153 Wn.2d 416, 423, 103 P.3d 1230 (2005).

The first section of the WCPA is entitled "Intent," and states:

> The legislature recognizes that persons convicted and imprisoned for crimes they did not commit have been uniquely victimized. Having suffered tremendous injustice by being stripped of their lives and liberty, they are forced to endure imprisonment and are later stigmatized as felons. A majority of those wrongly convicted in Washington state have no remedy available under the law for the destruction of their personal lives resulting from errors in our criminal justice system. The legislature intends to provide an avenue for those who have been wrongly convicted in Washington state to redress the lost years of their lives, and help to address the unique challenges faced by the wrongly convicted after exoneration.

RCW 4.100.010.

7

The critical subsection of the WCPA for present purposes is RCW 4.100.080(1),

which appears in the section entitled "Remedies and compensation exclusive—

Admissibility of agreements." Reformatted for ease of reading and analysis, it provides:

> (1) It is the intent of the legislature that the remedies and compensation provided under this chapter shall be exclusive to all other remedies at law and in equity against the state or any political subdivision of the state.
>
> As a requirement to making a request for relief under this chapter, the claimant waives any and all other remedies, causes of action, and other forms of relief or compensation against the state, any political subdivision of the state, and their officers, employees, agents, and volunteers related to the claimant's wrongful conviction and imprisonment. This waiver shall also include all state, common law, and federal claims for relief, including claims pursuant to 42 U.S.C. Sec. 1983.
>
> A wrongfully convicted person who elects not to pursue a claim for compensation pursuant to this chapter shall not be precluded from seeking relief through any other existing remedy.
>
> The claimant must execute a legal release prior to the payment of any compensation under this chapter. If the release is held invalid for any reason and the claimant is awarded compensation under this chapter and receives a tort award related to his or her wrongful conviction and incarceration, the claimant must reimburse the state for the lesser of:
>
> (a) The amount of the compensation award, excluding the portion awarded pursuant to RCW 4.100.060(5) (c) through (e); or
>
> (b) The amount received by the claimant under the tort award.

RCW 4.100.080(1).

We agree with the plaintiffs and the federal court that notwithstanding the

requirement that a WCPA claimant "waives any and all other remedies, causes of action,

and other forms of relief or compensation" against the state and state actors, *see id.*, the

WCPA allows for concurrent actions as long as the claimant does not both recover relief

from the State or state actors *and* receive and retain compensation under the WCPA.

This is implied by the fact that before WCPA compensation is paid, the claimant must

execute a legal release. *Id.* Execution of a release would be unnecessary if the waiver

was binding at the inception of a request for relief under the WCPA. It is also implied by

the subsection's recognition that even a claimant who has requested relief and signed a

legal release might recover a tort award if the release were held invalid. *See id.*

We reject the plaintiffs' contention that the requirement that a WCPA claimant

release claims operates only prospectively, and has no application if a claimant's first

recovery is for non-WCPA claims, followed by the payment of compensation under the

WCPA. The plaintiffs argue that the trial court erred by allowing the legislature's stated

intent to create an "exclusive remedy" to trump plain language of the WCPA's operative

provisions.[2] We begin our analysis with the operative provisions.

The gloss that the plaintiffs wish to put on the WCPA conflicts with its plain

language. They argue that "[t]he WCPA creates a narrow, *prospective* waiver of

remedies by conditioning the payment of compensation on a release of *future* claims,

actions, or proceedings." Appellants' Opening Br. at 18 (emphasis added). But the

relevant language in RCW 4.100.080 does not say, "As a requirement to making a

---

[2] The plaintiffs cite *State v. Granath* for the rule that "[t]he legislature's codified declaration of intent cannot 'trump the plain language of the statute.'" 190 Wn.2d 548, 556, 415 P.3d 1179 (2018) (quoting *State v. Reis*, 183 Wn.2d 197, 212, 351 P.3d 127 (2015)).

request for relief under this chapter, the claimant *prospectively* waives any and all other

remedies, causes of action, and other forms of relief or compensation . . . related to the

claimant's wrongful imprisonment . . . [and] must execute a legal release *of future claims*

prior to the payment of any compensation under this chapter." It says, instead:

> As a requirement to making a request for relief under this chapter, the
> claimant waives any and all other remedies, causes of action, and other
> forms of relief or compensation . . . related to the claimant's wrongful . . .
> imprisonment . . . [and] must execute a legal release prior to the payment of
> any compensation under this chapter.

Elsewhere, the plaintiffs contend that there is a "particular way in which the

legislature codified a waiver and any idea of 'exclusive remedies' within the Act: there

must be a legal release; it must then be held invalid; and there must be a *subsequent* tort

payment 'related to his or her wrongful conviction and incarceration.'" Appellants'

Opening Br. at 25 (emphasis added). That is the manner in which *reimbursement*

language of RCW 4.100.080(1) operates, because one can only reimburse something that

was previously disbursed. When the tort award or settlement is received first, the way in

which the legislature effectuated the requirement that WCPA compensation be an

exclusive remedy was with the requirement that "[t]he claimant must execute a legal

release prior to the payment of any compensation under this chapter." RCW

4.100.080(1). A claimant who has received a tort award or settlement will not be able to

waive claims and execute a legal release.

"Waiver" and "release" have well-settled legal meanings. "Waive" means:

> **1.** To abandon, renounce, or surrender (a claim, privilege, right, etc.); to give up (a right or claim) voluntarily. • Ordinarily, to waive a right one must do it knowingly — with knowledge of the relevant facts.

BLACK'S LAW DICTIONARY at 1894 (11th ed. 2019).  Relevant meanings of "release" are:

> **1.** Liberation from an obligation, duty, or demand; the act of giving up a right or claim to the person against whom it could have been enforced <the employee asked for a release from the noncompete agreement>. — Also termed discharge; surrender.  **2.** The relinquishment or concession of a right, title, or claim <Benson's effective release of the claim against Thompson's estate precluded his filing a lawsuit>.

*Id.* at 1530 (some emphasis omitted).  To "give up a right or claim" is a meaning common to both terms.

Whether an individual is waiving or releasing a past or future claim will generally be determined from the description of the claim being waived or released, not from the use of the words "past" or "future."  Thus, upon buying a ticket for a baseball game, one might give up a claim for any injury arising from the playing of that game, a claim that would inherently arise in the future.  Conversely, an agreement to waive or release a claim for injury of a baseball game that occurred last year gives up a claim that inherently arose in the past.

The claims that the WCPA requires be waived are "remedies, causes of action, and other forms of relief or compensation against the state, any political subdivision of the state, and their officers, employees, agents, and volunteers *related to the claimant's wrongful conviction and imprisonment*."  RCW 4.100.080(1) (emphasis added).  "[T]he

11

claimant's wrongful conviction and imprisonment" necessarily refers to the conviction

and imprisonment that occurred in the past and gives rise to the claimant's rights under

the WCPA.

Having settled their federal claims, the plaintiffs no longer had the ability to give

up the relevant claims: they had already given them up. The "Settlement Agreement and

Release of All Claims" signed with the federal defendants "release[d] and fully

discharge[d]" the State, the officers, and various agents, from

> any and all manner of claims, demands, liabilities, obligations, damages,
> causes of action or suits . . . which Plaintiffs . . . may have against the
> released parties herein, arising from or in any way connected with [the
> Section 1983 action] . . . includ[ing] . . . all claims, demands, liabilities,
> obligations, damages, causes of action or suits . . . which have been . . .
> alleged in [the Section 1983 action] or otherwise arise from the events
> described in the [Section 1983 action].

CP at 147 (some capitalization omitted). The only claims carved out from the broad

scope of the settlement agreement and release were the plaintiffs' pending WCPA claims.

Following settlement and execution of the settlement agreement and release of all

claims, the plaintiffs were no longer capable of satisfying the conditions to compensation

required by the WCPA: the condition that they waive all remedies, causes of action, and

other forms of relief or compensation against the State and state actors related to their

12

wrongful conviction and imprisonment, and the condition that they execute a legal release.[3]

This plain reading of the operative provisions of the WCPA is, of course, strongly supported by the introductory language of RCW 4.100.080(1) that "the remedies and compensation provided under this chapter shall be exclusive to all other remedies at law and in equity against the state or any political subdivision of the state."

The plaintiffs direct our attention to *State v. Oakley*, a Texas Supreme Court decision that construed Texas statutes as permitting a wrongfully convicted individual to sue for and recover a federal remedy before, but not after, obtaining wrongful imprisonment compensation from the State. 227 S.W.3d 58, 63 (Tex. 2007). The Texas statute was forward-looking, stating that a person compensated under the state statute "may not bring" another action involving the same subject matter against any governmental unit or an employee of any governmental unit. *Id.* (quoting TEX. CIV. PRAC. & REM. CODE § 103.153(b), a statute entitled "Employees Not Liable *After* Payment of Compensation" (emphasis added)).

---

[3] The plaintiffs do not make the specious argument that "execute a legal release" means nothing more than to sign a document entitled "Release," which can be done as easily after receiving a tort award or settlement payment as before receiving such an award or settlement. Fairly read, "execute a legal release" is an act having legal substance that cannot be done by a claimant who has already obtained a tort award or settlement from state actors.

In holding that a wrongly convicted person could be compensated in two forums under the Texas statute, the Texas Supreme Court observed that if "bar[ring] duplicative recoveries . . . had . . . been the [legislative] aim, legislators could have said simply that no one can recover both." *Id.* It was the Washington Legislature's aim that WCPA compensation, if obtained, be an exclusive remedy, and that is what its provisions ensure.

Finally, the plaintiffs emphasize that in the prior appeal, this court recognized that the WCPA, being a remedial statute, must be "'liberally construed to suppress the evil and advance the remedy.'" Appellants' Opening Br. at 18 (quoting *Larson*, 194 Wn. App. at 735). They argue that this requires us to narrowly construe what they characterize as the "exemption" created by RCW 4.100.080(1). *Id.* RCW 4.100.080(1) is not fairly characterized as an exemption, however. It creates conditions that apply to every individual requesting relief under the act. Moreover, the stated intent of the WCPA is not to add one more remedy to others that might be available. It is addressed to the "majority of those wrongly convicted in Washington state [*who*] *have no remedy available* under the law for the destruction of their personal lives resulting from errors in our criminal justice system," to "provide *an* avenue for those who have been wrongly convicted in Washington state." RCW 4.100.010 (emphasis added).

Fairly read, the WCPA conditions compensation on a wrongly convicted person's ability to provide an effective waiver and legal release of claims. The plaintiffs were unable to satisfy the statutory conditions.

II.     THE TRIAL COURT DID NOT ERR IN VACATING THE PLAINTIFFS' JUDGMENT UNDER
        CR 60

The plaintiffs also briefly argue that the trial court improperly relied on CR

60(b)(11) to vacate their judgment. They infer that the court relied on that subsection.

Citing case law that characterizes subsection (11) as "'a catch-all provision, intended to

serve the ends of justice in extreme, *unexpected* situations,'" the plaintiffs argue their

settlement with the federal defendants was *expected* at the time their judgment was

entered, and the judgment was not appealed. Appellants' Opening Br. at 46-47 (quoting

*In re Det. of Ward*, 125 Wn. App. 374, 379, 104 P.3d 751 (2005)).

We review a trial court's decision on a motion to vacate for an abuse of discretion.

*DeYoung v. Cenex*, 100 Wn. App. 885, 894, 1 P.3d 587 (2000). A trial court abuses its

discretion when it exercises it on untenable grounds or for manifestly unreasonable

reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

The State moved for the judgment to be vacated under CR 60(b)(6), not CR

60(b)(11). The former subsection authorizes a trial court to relieve a party from a final

judgment when "[t]he judgment has been satisfied, released, or discharged, or a prior

judgment upon which it is based has been reversed or otherwise vacated, or it is no longer

equitable that the judgment should have prospective application." The plaintiffs argue

that it would be untenable to find inequity, because even the trial court recognized that

15

$2.25 million was not sufficient compensation for three individuals' wrongful

incarceration for four years.

In orally granting the motion, the trial court used language suggesting it might be

relying on CR 60(b)(1), stating that it would vacate the judgment

> under CR 60(b) due to *irregularities* that have occurred here with two
> different actions proceeding at the same time, one of those occurring after
> this case had been finalized and on appeal. The Court possesses the
> authority under CR 60(c) and (b) to make that finding.

RP at 35 (emphasis added). CR 60(b)(1) identifies, as a reason authorizing a trial court to

relieve a party from a final judgment, "[m]istakes, inadvertence, surprise, excusable

neglect or *irregularity* in obtaining a judgment or order."  (Emphasis added.)

We can affirm a trial court on any basis supported by the record. *Nast v. Michels*,

107 Wn.2d 300, 308, 730 P.2d 54 (1986). The State reasonably identified CR 60(b)(6) as

providing authority to vacate. CR 60(b)(6) does not turn on whether the judgment

provides a *remedy* that is inequitable; it turns on whether "it is no longer equitable that

the judgment should have prospective application." Applying the rule of ejusdem

generis, inequity in a "judgment . . . hav[ing] prospective operation" should be construed

to embrace reasons similar to the reasons for vacating judgments that have been satisfied,

released, discharged, or that were based on a judgment that has been reversed or

otherwise vacated. In this case, the similar inequity is that the judgment was predicated

on the plaintiffs' waiver and release of other claims—claims that, as it turns out, were not waived and could not be released.

The plaintiffs also make a passing challenge to the fact that the statutory procedure of presenting the plaintiffs with a legal release to execute was not followed. As the State argues, however, the law does not require futile acts. *E.g.*, *Ancheta v. Daly*, 77 Wn.2d 255, 263, 461 P.2d 531 (1969).

Affirmed.

_____
Siddoway, J.

WE CONCUR:

_____
Fearing, J.

_____
Pennell, A.C.J.